UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JAMES EDWARD CROTTY,

                                             Plaintiff,         Case # 17-CV-97-FPG

v.

                                                                   DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                                             Defendant.

## INTRODUCTION

James Edward Crotty brings this action pursuant to the Social Security Act ("the Act") seeking review of the final decision of the Acting Commissioner of Social Security that denied his application for Disability Insurance Benefits ("DIB") under Title II of the Act. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. § 405(g).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 13, 19. For the reasons that follow, Plaintiff's motion is GRANTED, the Commissioner's motion is DENIED, and this matter is REMANDED to the Commissioner solely for calculation and payment of benefits.

## BACKGROUND

On October 25, 2012, Crotty protectively applied for DIB with the Social Security Administration ("SSA"). Tr.[1] 143-49. He alleged disability since May 31, 2012 due to a torn bicep tendon in the right shoulder, a stress fracture in the right ankle, anxiety, and depression. Tr. 165. On July 25, 2014, Crotty and a vocational expert ("VE") appeared and testified at a hearing before Administrative Law Judge William M. Weir ("the ALJ"). Tr. 37-84. On April 15, 2015, the ALJ

---

[1] "Tr." refers to the administrative record in this matter.

issued a decision finding that Crotty was not disabled within the meaning of the Act. Tr. 21-31. On December 5, 2016, the Appeals Council denied Crotty's request for review. Tr. 1-4. Thereafter, Crotty commenced this action seeking review of the Commissioner's final decision. ECF No. 1.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

### II. Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of

impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). 20 C.F.R. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (20 C.F.R. § 404.1509), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See* 20 C.F.R. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id.* If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. 20 C.F.R. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

**I.  The ALJ's Decision**

The ALJ's decision analyzed Crotty's claim for benefits under the process described above. At step one, the ALJ found that Crotty had not engaged in substantial gainful activity from his alleged onset date of May 31, 2012 through his date last insured of June 30, 2014. Tr. 23. At step two, the ALJ found that Crotty has the following severe impairments: obesity, status post joint injuries to the ankle and shoulder, and major depressive, mood, and generalized anxiety disorders. *Id*. At step three, the ALJ found that these impairments, alone or in combination, did not meet or medically equal an impairment in the Listings. Tr. 23-264.

Next, the ALJ determined that Crotty retained the RFC to perform medium work,[2] but that due to Crotty's mental health issues, "he is limited to one or two steps instructions and no simultaneous conflicting goals or priorities." Tr. 26-29.

At steps four and five, the ALJ found that Crotty could not perform his past relevant work but could adjust to other work that exists in significant numbers in the national economy given his RFC, age, education, and work experience. Tr. 29-30. Specifically, the VE testified that Crotty could work as a laundry worker and hand packer. Tr. 30. Accordingly, the ALJ concluded that Crotty was not "disabled" under the Act. Tr. 30-31.

**II.  Analysis**

Crotty argues that remand is required because the ALJ violated the treating physician rule. ECF No. 13-1 at 10-11. Specifically, Crotty asserts that the ALJ should have given controlling

---

[2] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, [the SSA] determine[s] that he or she can also do sedentary and light work." 20 C.F.R. § 404.1567(c).

weight to the opinion of his treating psychiatrist, John Napoli, M.D., and that he did not provide good reasons for discounting that opinion. *Id.* The Court agrees.

### A. Dr. Napoli's Examination Findings and Opinions

The record contains a psychiatric evaluation, a medical source statement, and a letter from Dr. Napoli. Tr. 550-58, 567.

On May 28, 2013, Dr. Napoli completed a psychiatric evaluation outlining Crotty's depression and anxiety symptoms and assessing his functional limitations. Tr. 550-55. He opined that Crotty has severe, continuous difficulty concentrating and severe, intermittent difficulty communicating clearly and effectively and holding a job. *Id.* Dr. Napoli noted that Crotty experiences moderate, continuous difficulty cleaning, persisting through tasks, completing tasks in a timely manner, repeating sequences of actions to achieve a goal, and assuming increased mental demands associated with competitive work. *Id.* He also noted that Crotty experiences moderate, intermittent difficulty with personal hygiene, initiating and participating in activities without supervision, cooperating with others, and sustaining tasks without an unreasonable number of breaks or undue distractions. *Id.*

Dr. Napoli also indicated that Crotty's condition deteriorates during stressful situations. Tr. 555. Stress prevents Crotty from appropriately accepting supervision, makes him withdraw from situations, exacerbates his symptoms, and causes poor decision making. *Id.* Dr. Napoli also indicated that Crotty will have poor attendance, superficial or inappropriate interaction with peers, and be unable to adapt to changing demands. *Id.*

On May 29, 2013, Dr. Napoli completed a medical source statement that assessed how Crotty's impairments impact his ability to work. Tr. 556-58. He opined that Crotty has extreme

5

limitation[3] in his ability to understand, remember, and carry out complex instructions and make judgments on complex work-related decisions and marked limitation[4] in his ability to make judgments on simple work-related decisions, interact appropriately with others, and respond appropriately to usual work situations and changes in a routine work setting. Tr. 556-57. Dr. Napoli also opined that Crotty has mild limitation[5] in his ability to understand, remember, and carry out simple instructions. Tr. 556. Dr. Napoli noted that when Crotty feels put on the spot, his thinking deteriorates and he gets defensive. Tr. 557.

On May 20, 2014, Dr. Napoli submitted a letter to the SSA opining that Crotty continues to struggle with mental health symptoms despite compliance with treatment. Tr. 567. He further opined that, when Crotty experiences difficult emotions, his thoughts quickly become suicidal and that he has attempted suicide three times. *Id.* Dr. Napoli concluded that Crotty could not handle the demands of a job. *Id.*

### B. Treating Physician Rule & the ALJ's Evaluation of Dr. Napoli's Opinion

The treating physician rule instructs the ALJ to give controlling weight to a treating physician's opinion when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(c)(2); *see also Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). An ALJ may discount a treating physician's opinion if it does not meet this standard, but he must "comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion." *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004); *see also* 20 C.F.R. § 404.1527(c)(2) ("We

---

[3] An individual has an extreme limitation in a work activity when he has a major limitation that causes no useful ability to function in that area. Tr. 556.
[4] An individual has a marked limitation in a work activity when he has a serious limitation that causes substantial loss in the ability to effectively function in that area. *Id.*
[5] An individual has a mild limitation in a work activity when he has a slight limitation but can generally function well. *Id.*

6

will always give good reasons in our notice of determination or decision for the weight we give [the claimant's] treating source's opinion.").

When a treating physician's opinion is not given "controlling" weight, the ALJ must consider the following factors in determining how much weight it should receive: "the length of the treatment relationship and the frequency of examination; the nature and extent of the treatment relationship; the relevant evidence, particularly medical signs and laboratory findings, supporting the opinion; the consistency of the opinion with the record as a whole; and whether the physician is a specialist in the area covering the particular medical issues." *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008) (quotation marks, alterations, and citations omitted); *see also* 20 C.F.R. § 404.1527(c)(1)-(6).

Here, the ALJ summarized Dr. Napoli's findings and discounted his opinion because he found it inconsistent with Crotty's daily activities and testimony. Tr. 28-29. The Court finds that these were not good reasons to discount Dr. Napoli's opinion and that substantial evidence supports Dr. Napoli's opinion that Crotty could not sustain full-time work.

In discounting Dr. Napoli's opinion, the ALJ stated that the "medical evidence of record as a whole does not corroborate Dr. Napoli's opinion and [Crotty] testified to functioning at higher levels, with less symptoms and limitations." Tr. 28. Although the ALJ is entitled to discount a medical opinion that he finds inconsistent with the record as a whole, *see* 20 C.F.R. § 404.1527(c)(4), the ALJ did not cite any medical evidence that conflicted with Dr. Napoli's opinion. Instead, the ALJ primarily relied on Crotty's testimony. Tr. 29. Specifically, the ALJ told Crotty at his hearing that the record indicated that he has "very severe problems being around people" and asked him whether he thought that was true. Tr. 58. Crotty answered, "I don't think

7

so. If they're nice to me then I'm going to . . . be nice to them." *Id.* The ALJ's decision inappropriately characterized this as Crotty disagreeing with Dr. Napoli's opinion.

Upon further questioning at the hearing, Crotty indicated that he has a "short fuse" and would get mad at or frustrated with a supervisor who told him he made a mistake. Tr. 58-59. This testimony does not contradict Dr. Napoli's findings; rather, this testimony supports his opinion that Crotty has difficultly cooperating and interacting appropriately with others and responding appropriately to usual work situations.

Crotty also testified that if he made a mistake at work he would get depressed, that he gets frustrated easily, and that his depression and suicidal thoughts keep him from working. Tr. 60, 62. This is consistent with Dr. Napoli's opinion that Crotty's condition deteriorates during stressful situations, that difficult emotions lead to suicidal thoughts, and that Crotty cannot handle the demands of a job. Accordingly, the record contradicts the ALJ's assertion that Dr. Napoli's opinion was inconsistent with Crotty's testimony and, therefore, this was not a good reason to discount that opinion.

The ALJ also discounted Dr. Napoli's opinion because Crotty "exhibited some degree of judgment" when he was stopped for speeding because he treated the police officer civilly and acknowledged he was wrong for speeding. Tr. 29, 61-62. This one instance is insufficient to find Dr. Napoli's opinion inconsistent with the record as a whole and is not a good reason to discount that opinion. Rather, the record supports Dr. Napoli's opinion, specifically the extensive treatment notes from Crotty's mental health counselor. Those notes indicate that Crotty was depressed, anxious, and angry, which is consistent with Dr. Napoli's assessment of serious mental health limitations. Tr. 355-73, 395-96, 511-15, 544-49, 567, 609-52. Those notes also reveal that Crotty experiences feelings of emptiness, hopelessness, frustration, irritability, and suicidal thoughts,

8

which support Dr. Napoli's opinion that Crotty struggles with mental health symptoms that cause suicidal thoughts. Tr. 609-52.

Finally, the ALJ discounted Dr. Napoli's opinion because he found it inconsistent with Crotty's daily activities like attending AA meetings, spending time with his neighbors, visiting friends, camping, and fishing. Tr. 25, 28-29. But a claimant "need not be an invalid" to be disabled under the Social Security Act, *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) (citation omitted), and Crotty's basic and limited daily activities do not undermine Dr. Napoli's opinion that he has many functional limitations due to his mental health impairments.

Accordingly, for the reasons stated, the Court finds that the ALJ violated the treating physician rule when he failed to provide good reasons for discounting Dr. Napoli's opinion.

### C. Remand for Calculation of Benefits

District courts are authorized to affirm, reverse, or modify the Commissioner's decision "with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand for calculation of benefits is appropriate only in cases where the record "provides persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose." *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980); *see also Butts v. Barnhart*, 388 F.3d 377, 385-86 (2d Cir. 2004). Courts must avoid "contribut[ing] any further to the delay of the determination of [a claimant's] application by remanding for further administrative proceedings" when such an instruction would prove unnecessary. *Diaz ex rel. E.G. v. Comm'r of Soc. Sec.*, No. 06-CV-530-JTC, 2008 WL 821978, at *8 (W.D.N.Y. Mar. 26, 2008); *see also McClain v. Barnhart*, 299 F. Supp. 2d 309, 310 (S.D.N.Y. 2004) (recognizing "delay as a factor militating against a remand for further proceedings where the record contains substantial evidence of disability").

The treating physician rule requires the ALJ to give controlling weight to a treating physician's opinion when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(c)(2); *see also Green-Younger*, 335 F.3d at 106.

Here, Dr. Napoli's opinion is well supported by his treatment notes, which reflect that Crotty demonstrated an anxious and depressed mood, appetite disturbance, decreased energy, difficulty concentrating and thinking, restlessness, fatigue, panic attacks, a sense of impending doom, heart palpitations, shortness of breath, nausea, numbness, feeling on edge, and thoughts of suicide. Tr. 551-53. Additionally, as explained above, Dr. Napoli's opinion is not inconsistent with other substantial record evidence. Specifically, the treatment notes from Crotty's mental health counselor and Crotty's hearing testimony are consistent with Dr. Napoli's opinion.

Given the controlling weight to which it is entitled, Dr. Napoli's opinion establishes that Crotty is disabled, because his impairment meets Listing 12.04, which defines affective disorders. To meet a Listings impairment, the claimant's impairment "must meet all of the specified medical criteria." *Barber v. Comm'r of Soc. Sec.*, No. 6:15-CV-0338 (GTS/WBC), 2016 WL 4411337, at *3 (N.D.N.Y. July 22, 2016) (citing *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)). "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Id.* If the impairment meets the criteria of a Listing and meets the durational requirement (20 C.F.R. § 404.1509), the claimant is disabled. *See Gibbs v. Colvin*, 155 F. Supp. 3d 315 (W.D.N.Y. 2015).

At the time of the ALJ's decision, Listing 12.04 required the claimant to exhibit continuous or intermittent medically documented persistence of at least four of the following to prove depressive syndrome:

(a) anhedonia or pervasive loss of interest in almost all activities;
(b) appetite disturbance with change in weight;

> (c) sleep disturbance;
> (d) psychomotor agitation or retardation;
> (e) decreased energy;
> (f) feelings of guilt or worthlessness;
> (g) difficulty concentrating or thinking;
> (h) thoughts of suicide; or
> (i) hallucinations, delusions or paranoid thinking.

20 C.F.R. § 404, Subpt. P, App. 1 at 12.04(A)(1)(a)-(i) (effective Jan. 2, 2015 to May 17, 2015).

Additionally, the claimant's depressive syndrome must result in at least two of the following: (1) marked restriction of daily activities; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration. *Id.* at 12.04(B)(1)-(4).

An ALJ must explain why a claimant failed to meet the Listings "[w]here the claimant's symptoms as described by the medical evidence appear to match those described in the Listings." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 273 (N.D.N.Y. 2009) (citation omitted). Here, the ALJ found that Crotty's impairment did not meet Listing 12.04 because he found that Crotty had no restriction in daily activities, mild difficulties in social functioning, moderate difficulties with concentration, and no episodes of decompensation. Tr. 25. In reaching these findings, the ALJ relied on Crotty's testimony and daily activities, rather than Dr. Napoli's opinion, which was entitled to controlling weight. *Id.*

In accordance with Listing 12.04, Dr. Napoli's treatment notes reveal that Crotty experiences continuous appetite disturbance, decreased energy, feelings of guilt or worthlessness, and difficulty concentrating or thinking. Tr. 551-52. His notes also show that Crotty experiences intermittent anhedonia or pervasive loss of interest in almost all activities, psychomotor agitation or retardation, and suicidal thoughts. Tr. 551-53. Dr. Napoli opined that Crotty has marked limitation interacting appropriately with others and severe, continuous difficultly concentrating.

Tr. 554-55. Crotty's impairment therefore meets the criteria of Listing 12.04 and, because his impairment has lasted more than 12 months, meets the durational requirement, which renders him disabled.

Thus, additional proceedings would serve no purpose and would only further delay Crotty's claim. Accordingly, the Court remands this matter solely for the calculation and payment of benefits.

## CONCLUSION

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 13) is GRANTED, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 19) is DENIED, and this matter is REMANDED to the Commissioner solely for calculation and payment of benefits. The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: October 18, 2018
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court